No. 13923

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

JOHN WAINMAN,

Plaintiff and Appellant,

-vs-

LARRY C. BOWLER, d/b/a THE
DANIELS COUNTY LEADER,

Defendant and Respondent.

Appeal from: District Court of the Fifteenth Judicial
District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Robert A. Meldahl argued, Fairview, Montana

For Respondent:

Traynor and Hoversland, Scobey, Montana
Ken W. Hoversland argued, Scobey, Montana

Submitted: Jan. 26, 1978

Decided: MAR 2 3 1978

Filed: MAR 2 3 1978

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by plaintiff from a judgment on the pleadings. Plaintiff's action for libel was commenced following publication of articles by defendant in The Daniels County Leader.

The complaint alleged that defendant published three articles containing libelous statements which were false, unprivileged, and calculated to drive plaintiff from his office. Those statements, segregated by plaintiff from the entire articles, are as follows:

> September 16, 1976: "There has been a dereliction of duty, bullying of people, concealment or deliberate non-recording of public records, plus abysmal lack of normal and reasonable access to the records which are recorded."

> October 21, 1976: "Increasing discourtesy and negligence by County and Scobey law enforcement officials in dealing with citizens of the area and visitors."

> November 11, 1976: " * * * bully boy chief of police in Scobey."

Plaintiff's first action for libel was commenced on December 2, 1976. This action was dismissed. A second action was filed after proper retraction time had passed pursuant to section 64-207.1, R.C.M. 1947. Defendant answered plaintiff's complaint and filed a motion for judgment on the pleadings. The motion was based on two grounds. First, the complaint states no cause of action upon which relief can be granted. Second, if the statements are viewed in the light most favorable to the plaintiff, defendant's statutory defenses of truth and privilege negate plaintiff's claims.

The District Court granted defendant's motion for judgment on the pleadings and dismissed plaintiff's complaint with prejudice. The Memorandum Opinion accompanying that order reads:

"The important pleading in this case is the Complaint and a reading of the Complaint reveals that all of the references in the Daniels County Leader that were published had reference to a general class of people, and although the Plaintiff was within that class, the language was insufficient to constitute libel per se. One exception was made and that was the publication on November 11, 1976, when the Editor of the Daniels County Leader referred to the Plaintiff as a 'bully boy chief of police in Scobey'. This language is not libel per se, and the facts constituting the innuendo are not set forth in a satisfactory manner. In addition, if libel is not per se it must appear by innuendo and special damages must be alleged. This was not done in this case."

Two issues are raised for review:

1. Whether the statements are libelous per se?

2. Whether the District Court erred in granting a judgment on the pleadings?

Issue 1. Plaintiff's first issue requires a review of the pleadings. On the face of the pleadings, it is obvious that the theory of plaintiff's complaint is libel per se. No special damages were alleged in the complaint. Montana law is clear on this subject. To state a cause of action for libel, the complaint must state a libel per se action or plead special damages to uphold a libel per quod action. Steffes v. Crawford, (1963), 143 Mont. 43, 47, 386 P.2d 842.

Accordingly, on the face of the pleadings and in light of settled law, the District Court was faced with the question: Were the statements libelous per se? These statements must be examined with the aid of the rules of interpretation as set forth by this Court in numerous cases. In Keller v. Safeway Stores, Inc., (1940), 111 Mont. 28, 31-32, 108 P.2d 605, this Court summarized the rules of interpretation for libel and slander cases:

"In determining whether false defamatory words said to have been spoken of and concerning the party complaining are or are not slanderous per se, the opprobrious words are to be construed according to their usual, popular and natural meaning and common acceptation, that is, in the sense in which persons out of court and of ordinary intelligence would understand them, for the presumption is to be indulged that the third party or parties present so understood them. * * *

"The statement made must be viewed by the court as a stranger might look at it, without the aid of special knowledge possessed by the parties concerned. * * *

"The language used must be susceptible of but one meaning and that an opprobrious one. * * *

"The alleged defamatory matter is to be construed as an entirety and with reference to the remaining portions of the conversation. * * *

"If the language is not slanderous per se, it cannot be made so by innuendo * * * because the term "per se" means by itself; simply as such; in its own nature without reference to its relations. * * * As otherwise stated in Manley v. Harer, supra: 'Words are defamatory per se which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken. If the injurious character of the words does not appear from their face when taken in their plain and natural meaning and according to the sense in which they appear to have been used, they are not defamatory per se but are said to require innuendo.'"

Applying these rules of interpretation to the articles of September 16, 1976, and October 21, 1976, reveals several violations of the rules by the plaintiff. First, plaintiff segregated the statements from the entire articles and imported a libelous per se meaning to them. The words used may not be segregated and construed alone. The entire printed statement must be viewed by the court as a stranger might look at it. Steffes, supra. A review of the entire articles of September 16 and October 21, taking the statements with relation to the whole and construing them with reference to the remaining portions, negates any opprobrious meaning.

-4-

Second, plaintiff alleges the statements refer to him personally. The District Court noted, and we agree, the statements refer to a general class of people. While the Scobey Police Department and the Daniels County Sheriff's office are small, the articles, when read in their entirety, refer to the departments over a period of years. There have been many men employed by these departments to whom the articles and statements could refer. At no point in either article is the defendant personally referred to or is he specifically set out. To be libelous per se, the publication must contain defamatory words specifically directed at the person claiming injury. Inter-State Detective Bureau, Inc. v. Denver Post, Inc., (1971), 29 Colo.App. 313, 484 P.2d 131, 133. Granger v. Time, Inc., (1977), ____ Mont. ____, 568 P.2d 535, 34 St.Rep. 983, 989.

Third, plaintiff alleges the statements have an opprobrious meaning. The rules of interpretation require that the language must be susceptible of but one meaning to constitute libel per se. Steffes, supra. Such unequivocal statement is not present in this case. A reader of the entire articles could reach more than one meaning.

The article of November 11, 1976, referring to the plaintiff as "bully boy chief of police" requires this Court to review the nature of the words. The District Court ruled that this statement does not import such a meaning that libel per se can be imputed. We agree.

The definition of libel per se is well established and long standing in Montana. Lemmer v. The "Tribune" et al., (1915), 50 Mont. 559, 564, 148 P. 338; Manley v. Harer, (1925), 73 Mont. 253, 235 P. 757; Griffin v. Opinion Publishing Co., (1943), 114 Mont. 502, 508, 138 P.2d 580; Lewis v.

-5-

Reader's Digest, (1973), 162 Mont. 401, 406, 512 P.2d 702. Where the injurious character of the words does not appear from their face when taken in their plain and natural meaning and according to the sense in which they appear to have been used, they are not libel per se. Manley, supra.

Additionally, the injurious character must be a fact of such common notoriety as to be established by the general consent of men so that the court takes judicial notice of it. Griffin, supra. The words "bully boy" are of doubtful significance and their injurious character does not appear on their face. Defamatory words to be actionable, as exposing a person to hatred contempt, ridicule or obloquy or which have a tendency to injure him in his occupation must be of such a nature that the court can presume as a matter of law that they will tend to disgrace and degrade him or cause him to be shunned and avoided. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings. Gang v. Hughes, (1953), 111 F.Supp. 27, 29.

This Court notes that "police officers in this day perhaps must be thick-skinned and prepared for abuse". Conchito v. City of Tulsa, (1974), Okl.Cr. 521 P.2d 1384, 1392. Justice Powell in Lewis v. City of New Orleans, (1972), 408 U.S. 913, 92 S.Ct. 2499, 33 L Ed 2d 321, remarked on the subject of epithets spoken to police officers saying that those epithets, had they been addressed by one citizen to another, face to face and in a hostile manner, would clearly have been fighting words, inherently likely to provoke a violent reaction. This remark was taken one step

-6-

further by Justice Powell where in his concurring opinion to Lewis v. City of New Orleans, (1974), 415 U.S. 130, 94 S.Ct. 970, 39 L Ed 2d 214, 220, he reiterated:

> "* * * a properly trained [police] officer
> may reasonably be expected to 'exercise
> a higher degree of restraint' than the
> average citizen, and thus be less likely
> to respond belligerently to 'fighting
> words.'* * *"

Plaintiff was a police officer and a public official. Due to the nature of his employment and status, he was subject to the vociferous comment by the public. To this fact, we must quote the United States Supreme Court in Cohen v. California, (1971), 403 U.S. 15, 91 S.Ct. 1780, 29 L Ed 2d 284, 294:

> "* * * Indeed, as Mr. Justice Frankfurter
> has said, '[o]ne of the prerogatives of
> American citizenship is the right to criti-
> cize public men and measures--and that means
> not only informed and responsible criticism
> but the freedom to speak foolishly and
> without moderation.' Baumgartner v. United
> States, 322 U.S. 665, 673-674, 88 L.Ed. 1525,
> 1531, 64 S.Ct. 1240 (1944)."

Issue 2. The statements of September 16, October 21, and November 11, 1976, were not libelous per se. No special damages were plead. No libel per quod action was plead. The District Court was correct in granting a judgment on the pleadings in that no material issues remained once a determination was made that libel per se was not involved. Steffes, supra.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

-7-